UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOBBY GOLDSTEIN PRODUCTIONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:21-CV-1924-G |
| THOMAS L. HABEEB and ATVD, LLC d/b/a AMERICAN TELEVISION DISTRIBUTION, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants Thomas L. Habeeb

("Habeeb") and ATVD, LLC, d/b/a American Television Distribution (collectively,

"the defendants") to compel arbitration and stay all proceedings (docket entry 21).

For the reasons set forth below, the motion is **DENIED**.

## I.  BACKGROUND

On August 18, 2021, the plaintiff Bobby Goldstein Productions, Inc. ("BGP")

sued the defendants for copyright infringement related to the marketing of episodes

stemming from the reality television show *Cheaters*.  Plaintiff's Original Complaint for

Copyright Infringement ("Complaint") (docket entry 1).  In 1995, Robert N.

Goldstein ("Goldstein") created *Cheaters* and started his own production company, BGP, to produce and shoot the show.  Complaint ¶ 9.  *Cheaters Uncensored* is a show comprised of uncensored footage from *Cheaters*.  *Id.*  BGP secured the exclusive rights and privileges in and to the copyright of *Cheaters* and *Cheaters Uncensored*.  *Id.* ¶ 10.

Goldstein and Habeeb collaborated on *Cheaters*.  Brief in Support of Defendants' Motion to Compel Arbitration ("Brief in Support of Motion") (docket entry 22) at 1.  Shortly after the show became successful, a dispute between Goldstein and Habeeb arose regarding ownership of *Cheaters*.  *Id.* at 2.  A lawsuit was filed in a Texas state court, *Tommy Habeeb, as a Shareholder of Goldstein/Habeeb/McCalmont Entertainment, Inc. v. Robert N. Goldstein, et seq.*, No. DV-03-13229-J (191st Judicial District Court, Dallas County, Dallas, Texas).  *Id.*  On October 3, 2005, Goldstein and Habeeb settled this dispute by orally entering the terms of settlement into the court record (hereinafter the "Settlement Agreement").  *Id.*; *See* Appendix to Defendant's Brief in Support of Motion to Compel Arbitration ("Appendix to Motion") (docket entry 23) at 6-26.  In January 2006, Goldstein and Habeeb subsequently signed the Supplement to October 3, 2005 Settlement Agreement ("Supplemental Agreement").  Appendix to Motion at 28-30.  The Settlement Agreement and Supplemental Agreement determine the rights of each signatory with respect to *Cheaters* and *Cheaters Uncensored* and dictate that

> Habeeb shall be the exclusive agent of Defendants in
> negotiating and marketing of an uncensored version of the

> television show "Cheaters" (hereinafter "Cheaters
> Uncensored").  Specifically, Habeeb shall have the
> exclusive right to approach potential pay-per-view and
> premium channel outlets and negotiate the terms of any
> agreement to broadcast Cheaters Uncensored . . . Habeeb
> agrees and reaffirms that Goldstein is the owner of all
> copyright in any and all footage of Cheaters that will be
> the basis for Cheaters Uncensored and will own the
> copyright in all episodes of Cheaters Uncensored . . . .

*Id.* at 28.

The parties agreed that Goldstein retained artistic and business control of the show.  *Id.* at 13-14.  Additionally, Goldstein specified that BGP was not granting Habeeb license to use *Cheaters* episodes and that the agreement did not constitute "an assignment of any copyright interest or intellectual property interest."  *Id.* at 15-17. Habeeb was given the "right to go out and secure these contracts [] as long as they're commercially reasonable."  *Id.*  The settlement was limited to *Cheaters Uncensored* and "exclude[d] Internet to be sure" because the "Internet is a different situation."  *Id.* at 19.

Paragraph 7 of the Supplemental Agreement contains the agreement to arbitrate:

> In the event that the parties have any dispute
> regarding the terms of the October 3, 2005
> settlement or this supplemental settlement, the
> parties have agreed to submit that dispute to Judge
> Haynes for decision.  In the event that Judge
> Haynes is no longer the judge in the 191st District
> Court of Dallas County, Texas, then the parties
> agree to submit their dispute to Harlan A. Martin

> for binding arbitration or such other arbitrator as
> the parties may agree to in the event of his
> unavailability . . . .

*Id.* at 29.[1]

On August 18, 2021, BGP filed this suit for copyright infringement against the defendants. *See generally* Complaint. BGP alleges that BGP "secured the exclusive rights and privileges in and to the copyright of the *Cheaters* and *Cheaters Uncensored* episodes," and that it did not authorize or grant Habeeb the "license to make copies of the Episodes on the Internet or to make the Episodes and/or derivative works thereof available for performance or display by the public on the Internet." Complaint ¶¶ 10-13. Next, BGP alleges that Habeeb violated its copyright by creating and uploading several "video trailers based upon Episodes" to three different internet websites. *Id.* ¶¶ 16-22. Habeeb allegedly uploaded the trailers to YouTube, Dailymotion, and Americantvd.[2] BGP further contends that Habeeb uploaded the video trailers to all three websites with the "intent and purpose of enabling, encouraging, and causing" the public to view the trailers and that the public did view or download the infringing material. *Id.* ¶¶ 17, 20, 23.

The defendants filed Defendants' Motion to Compel Arbitration ("Motion")

---

[1]     Judge Haynes is now on the United States Court of Appeals for the Fifth Circuit and is thus no longer the judge in the 191st District Court of Dallas County, Texas.

[2]     Americantvd is a video-sharing platform allegedly owned, operated, and controlled by the defendants. Complaint ¶ 21.

(docket entry 21) citing paragraph 7 of the Supplemental Agreement containing the agreement to arbitrate "any dispute regarding the terms of the October 3, 2005 settlement or this supplemental settlement[.]"  Motion at 2; Appendix to Motion at 29.  The defendants contend that this clause requires that the parties arbitrate the dispute currently before this court because "[t]he terms of the settlement agreement provide Habeeb with all the exclusive rights to negotiate and market, as well as distribute the 'Uncensored' versions of Cheaters."  Brief in Support of Motion at 2. The defendants allege that the "rights to negotiate and market, as well as distribute the 'Uncensored' Cheaters episodes includes the license to use the alleged copyrighted material in the marketing and promotion of the uncensored version of Cheaters[]" and that "[t]hese are the same rights to the 'Uncensored' episodes of Cheaters now challenged in this Federal lawsuit."  *Id.*

In response, BGP contends that the Settlement Agreement and Supplemental Agreement "resolved a lawsuit between Mr. Habeeb and Mr. Goldstein.  BGP was neither a party to the lawsuit nor a signatory to the settlement agreement; indeed, the terms of the settlement agreement do not even mention BGP, and there is no evidence that the parties intended the settlement agreement to apply to BGP." Plaintiff Bobby Goldstein Productions, Inc.'s Response in Opposition to Defendants' Motion to Compel Arbitration and Brief in Support Thereof ("Response") (docket entry 26) at 1.  BGP also notes that "[w]hile Mr. Goldstein is the Director of BGP,

he signed the settlement agreement in his individual capacity only." *Id.* at 1 n.1.

Additionally, BGP argues that even if it were a party to the Settlement Agreement,

the Motion fails because "[t]he arbitration clause narrowly applies to disputes

'regarding the terms' of the settlement agreement.  This lawsuit concerns Defendants'

infringement of BGP's copyrights; it is not based on the terms of the settlement

agreement . . . it is undisputed that the parties' settlement agreement did not grant

Mr. Habeeb any interest in the copyrights to *Cheaters Uncensored*." *Id.* at 1.  Further,

BGP argues that "the settlement agreement expressly excluded from Habeeb's limited

marketing rights any right to publish the works on the internet[]" and "Habeeb

merely had the limited right 'to approach potential pay-per-view and premium

channel outlets and negotiate the terms of any agreement to broadcast Cheaters

Uncensored.'" *Id.* at 1-2.  BGP contends that "[b]ecause the settlement agreement

did not involve the granting of any copyright interest to Defendants, BGP's copyright

infringement claims stand on their own and do not arise from the settlement

agreement." *Id.* at 2.  Therefore, BGP asks this court to deny the motion to compel

arbitration.  *Id*.

## II.  ANALYSIS

### A.  Legal Standard

Federal law strongly favors arbitration.  *Buckeye Check Cashing, Inc. v. Cardegna*,

546 U.S. 440, 443 (2006); see also *Moses H. Cone Memorial Hospital v. Mercury*

*Construction Corporation*, 460 U.S. 1, 24-25 (1983) ("The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").  Much like the federal policy, there is "a strong presumption in Texas public policy favoring arbitration and upholding the parties' intentions."  *ASW Allstate Painting & Construction Company, Inc. v. Lexington Insurance Company*, 188 F.3d 307, 310 (5th Cir. 1999).

While there are strong federal and state policies favoring arbitration, the court does not yield to these policies when making the initial threshold determination about the existence of an agreement to arbitrate, *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (per curiam)*; Will-Drill Resources, Inc. v. Samson Resources Company*, 352 F.3d 211, 214 (5th Cir. 2003), and the controversy must come within the contract's arbitration provision before the court can order arbitration.  See *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) ("Although we have repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists.").

To determine whether parties should be compelled to arbitrate their dispute, the Fifth Circuit has developed a two-step inquiry.  *OPE International LP v. Chet*

- 7 -

*Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) (per curiam).  First, the court must determine "whether the parties agreed to arbitrate their dispute."  *Id.* Two considerations guide the court in making this determination: (1) whether a valid agreement to arbitrate exists between the parties; and (2) if the court finds that the parties agreed to arbitrate, whether the dispute in question is within the scope of the arbitration agreement.  *Id.*; *ASW Allstate Painting*, 188 F.3d at 311 (citing *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 378 (Tex. App. – Tyler 1996), writ dismissed w.o.j., 988 S.W.2d 731 (Tex. 1998)).  "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence."  *Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir. 2012) (per curiam).

Second, the court must ensure that no legal constraints external to the agreement have foreclosed arbitration of the disputed claims.  *OPE International*, 258 F.3d at 446.  If the court finds that this two-step inquiry is satisfied, arbitration must be ordered.  *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  Here, the court's analysis need only reach the first prong.

## B. Application

The defendants seek to compel arbitration according to the terms of paragraph 7 of the Supplemental Agreement signed by Goldstein and Habeeb.  Brief in Support of Motion at 4.  BGP opposes the defendants' motion on two grounds.  Response at

- 8 -

1.  First, BGP contends that the court cannot enforce the arbitration clause against it because it was neither a party nor a signatory to the Settlement Agreement and Supplemental Agreement as that settlement resolved a lawsuit between Goldstein and Habeeb as individuals.  *Id.*  Specifically, BGP argues that the terms of the Settlement Agreement and Supplemental Agreement do not mention BGP, and that there is no evidence suggesting that the parties intended the settlement to apply to BGP.  *Id.* Second, BGP avers that should the court find the arbitration clause enforceable, its claims do not fall within the scope of the clause as this lawsuit concerns the defendants' alleged infringement of BGP's copyrights and is not based on the terms of the settlement, which merely granted Habeeb rights to act as the "exclusive agent in negotiating and marketing" the show *Cheaters Uncensored*.  *Id.*

The Fifth Circuit applies six theories under which a court may compel a nonsignatory to arbitration:  (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; and (6) third-party beneficiary. *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) (citations omitted), *cert. denied*, 541 U.S. 937 (2004); see also *Al Rushaid v. National Oilwell Varco, Inc.*, 814 F.3d 300, 305 (5th Cir. 2016); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015).  To the issue of compelling a nonsignatory to arbitration, the defendants argue:  "[a] non-signatory can be compelled to arbitrate when its agent enters a binding arbitration agreement."  Brief

in Support of Motion at 3 (citing *Board of Trustees of City of Delray Beach Police &
Firefighter's Retirement System v. Citigroup Global Markets Inc.*, 622 F.3d 1335, 1342
(11th Cir. 2010)).  Thus, the defendants appear to put forward agency theory as the
method by which the court should compel BGP, a non-signatory, to arbitration.
However, the defendants do not explicitly cite any of these Fifth Circuit theories.

BGP is a nonsignatory to the Settlement Agreement and Supplemental
Agreement.  The Fifth Circuit has "consistently held that where parties have not
signed an arbitration agreement, they cannot be compelled to arbitrate."  *The Rice Co.
(Suisse), S.A. v. Precious Flowers Ltd.*, 523 F. 3d 528, 537 (5th Cir. 2008).  "Who is
actually bound by an arbitration agreement is a function of the intent of the parties,
as expressed in the terms of the agreement."  *Id.* (quoting *Bridas*, 345 F.3d at 355).
However, these guidelines are "not offended by principles of agency familiar to the
law of contracts."  *Id.* at 538.  "Directly put, where an agent signs a contract requiring
arbitration, the principal is bound by the arbitration requirement."  *Id.*  "An agency
relationship may be demonstrated by 'written or spoken words or conduct, by the
principal, communicated either to the agent (actual authority) or to the third party
(apparent authority).'"  *Bridas*, 345 F.3d at 357 (quoting *Hester International Corp. v.
Federal Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989)).

As a non-signatory to the arbitration agreement, BGP is "entitled to a
presumption of independent status."  *Lake Texoma Highport, LLC v. Certain*

- 10 -

*Underwriters at Lloyd's of London*, No. 4:08-CV-0285, 2010 WL 11530311, at *3 (E.D.

Tex. May 14, 2010) (quoting *Bridas*, 345 F.3d at 356); see also *MaxoTech Solutions*

*LLC v. PamTen Inc.,* No. 3:20-CV-1387-S, 2020 WL 6489015, at *4 (N.D. Tex. Nov.

3, 2020) (Scholer, J.) ("There is a presumption that parties contract for themselves

only.").  BGP contends that "[a]bsent evidence that a person acted as another's agent

when signing an agreement with an arbitration clause, the fact that a person might

generally act as another's agent is not itself sufficient to bind the other's claims to

arbitration.  See *Lake Texoma Highport*, 2010 WL 11530311, at *3 ('Absent evidence

that Insurance Alliance acted as Highport's agent when the Brokerage Agreement was

signed, the statement that Insurance Alliance is generally Highport's agent is not

sufficient to bind Highport's claims to arbitration.')."  Response at 5.  Therefore, the

question is whether Goldstein signed the Settlement Agreement and Supplemental

Agreement as an agent for BGP or as an individual.  See *Bridas*, 345 F.3d at 356-57.

Whether a signatory acted as an agent for a non-signatory – thereby subjecting the

non-signatory to the arbitration agreement – is a question of both law and fact.  *Id.* at

356.  Agency is defined as the "fiduciary relation which results from the

manifestation of consent by one person to another that the other shall act on his

behalf and subject to his control, and consent by the other so to act."  *Id.* at 357

(quoting RESTATEMENT (SECOND) OF AGENCY § 1(1) (1958)).  Manifestation of

consent is demonstrated in two ways.  *Id.*  The principal directs "written or spoken

words or conduct" to the agent, creating actual authority, or to a third-party, creating apparent authority. *Id.* (quoting *Hester International Corp.,* 879 F.2d at 181). The moving party carries the burden of proving that Goldstein acted with either actual or apparent authority. *Id.* at 356.

The defendants have failed to demonstrate that Goldstein acted with actual or apparent authority in signing the Settlement Agreement and Supplemental Agreement on behalf of BGP. First, the defendants failed to establish that Goldstein acted with actual authority because they have not pointed to any spoken or written words, or conduct of BGP to Goldstein where BGP authorized Goldstein to act on its behalf. See *Bridas*, 345 F.3d at 357. Therefore, the defendants must show that Goldstein had apparent authority to act on behalf of BGP when he negotiated and signed the Settlement Agreement and Supplemental Agreement. See *id.* The defendants make three points in support of their contention that there is a valid agreement to arbitrate between BGP and Habeeb: (1) "[a]t the time, the settlement agreement was entered into Bobby Goldstein claimed ownership of the copyrights to Cheaters[]" and "represented to the 191st Judicial District Court, Dallas County, Texas, that he had authority to discuss the copyright rights of Cheaters[;]"[3] (2)

---

[3]     The defendants cite the following excerpt from the Settlement:

[Habeeb's Lawyer]: It's also my understanding that this will be done, you know, formally in the form of a grant of a intellectual life, in the sense of intellectual rights in

"[u]pon information and belief Bobby Goldstein is the principal of Plaintiff [BGP], that now claims ownership of the copyrights[;]" and (3) "Bobby Goldstein has been receiving the benefits of the settlement agreement entered into since 2005."  Brief in Support of Motion at 4.

In response to the first point, BGP contends that "Mr. Goldstein did not represent to the Court that he had authority to discuss the copyright to *Cheaters* episodes.  To the contrary, Mr. Goldstein's attorney stated on the record that 'we want it to be pretty clear that we're not making an assignment of any copyright interest or intellectual property interest.'"  Response at 6 (quoting Appendix to Motion at 17).  BGP further argues that "[e]ven if Defendants' claims were accurate, they are irrelevant[]" because "'[q]uestions of apparent authority turn on the reasonableness of a third party's belief in an executive's authority and whether these

---

accordance with the terms that Jeff stated.

[Goldstein's Lawyer]:  Well I don't know that's the verb I would use the license.  I think what we're – the better way to characterize what we are talking about is more of a distributorship agreement.  In other words, Mr. Habeeb will have the right to go out and secure these contracts that as long as they're commercially reasonable – ***in fact, we want to be pretty clear that we're not making an assignment of any copyright interest or intellectual property interest. We don't want to get in that mess again.  This is a contractual arrangement.***"

Brief in Support of Motion at 4 (citing Appendix to Motion at 16-17) (emphasis added).

- 13 -

beliefs are traceable to conduct of the corporation . . . .'"  Response at 6 (quoting RESTATEMENT (THIRD) OF AGENCY § 3.03 (2006)).  Further, "'[i]n the absence of a link to conduct of the corporation, a third party's belief in an executive's authority is not encompassed by apparent authority if it is based solely on the executive's own representations of authority.'"  *Id.*  Thus, "'[w]hen considering a question of apparent authority, one must look only to the acts of the principal; the acts of the agent are irrelevant.'"  Response at 7 (quoting *Stroud v. Meister*, No. 3:97-CV-0860-L, 2001 WL 282764, at *13 (N.D. Tex. Mar. 16, 2001) (Lindsay, J.) (quoting *Munoz v. II Jaz Inc.*, 863 S.W.2d 207, 209 (Tex. App. – Houston [14th Dist.] 1993, no writ))).  It follows then that even if "Goldstein represented to the 191st Judicial District Court, Dallas County, Texas, that he had authority to discuss the copyright rights of Cheaters[,]" this is an act of the alleged agent, not of the principal.  Brief in Support of Motion at 4; see *Stroud*, 2001 WL 282764, at *13.  The defendants have not pointed to any act or statement by BGP that it intended for Goldstein to act as its agent when negotiating and signing the Settlement Agreement and Supplement Agreement.

With regard to the second point, even though Goldstein was the Director of BGP at the time of the settlement, the defendants fail to cite any evidence demonstrating that Goldstein was acting as an agent for BGP when he signed the settlement agreement.  Even if Goldstein has generally acted as BGP's agent in other settings, that is not sufficient on its own to show that Goldstein acted as BGP's agent

- 14 -

when he negotiated and signed the Settlement Agreement and Supplemental Agreement.  See *Lake Texoma Highport*, 2010 WL 11530311, at *3 ("Absent evidence that Insurance Alliance acted as Highport's agent when the Brokerage Agreement was signed, the statement that Insurance Alliance is generally Highport's agent is not sufficient to bind Highport's claims to arbitration.").  Further, BGP was not a party to the litigation between Goldstein and Habeeb which resulted in the Settlement Agreement and Supplemental Agreement and "at no time during the hearing before Judge Haynes did either party mention that the settlement agreement would be binding upon BGP."  Response at 5.  BGP is not mentioned in the Settlement Agreement or Supplemental Agreement.  *Id.*  In *Bridas*, the Fifth Circuit declined to subject a nonsignatory to an arbitration clause under an agency theory where the parties to the arbitration agreement were sophisticated and represented by competent legal counsel.  See *Bridas*, 345 F.3d at 358  ("Had Bridas truly felt that Turkmenneft was signing the agreement not for itself but on behalf of the Government, it had the obligation to make that fact clear on the face of the agreement.  This could have been accomplished in a myriad of ways.  Bridas could have requested that the Government sign the agreement, or inserted a prominent and direct statement as to Turkmenneft's status.  Bridas has not presented any evidence that would permit us to excuse such an oversight.").  Therefore, if Habeeb was under the impression that Goldstein was signing the agreement on behalf of BGP, Habeeb had an obligation to "make that fact

- 15 -

clear on the face of the agreement." See *id*. He failed to do so.

With regard to the third and final point, the court agrees with BGP that "[a]s a party to the settlement agreement, the fact that Mr. Goldstein has received some benefits from it is both unsurprising and unremarkable." Response at 7. Goldstein individually is not a party to this lawsuit and the defendants fail to assert, or show any evidence, that BGP received any direct benefit from the settlement agreement. Further, the court agrees with BGP that "[t]o the extent that Defendants make this statement to support an argument for 'direct benefits' estoppel, Defendants' failure to develop this argument in their brief amounts to waiver." *Id.*; see *Magee v. Life Insurance Company of North America*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) ("The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal. By analogy, failure to brief an argument in the district court waives that argument in that court." (internal citations omitted)). The record shows that Goldstein signed the Settlement Agreement and Supplemental Agreement in his individual capacity and for his personal benefit. Therefore, the defendants have failed to show that Goldstein acted with apparent authority to sign on behalf of BGP, and his actions cannot be imputed to BGP. See *Bookout v. Bookout*, 165 S.W.3d 904, 912 (Tex. App. – Texarkana 2005, no pet.) (finding no corporate liability for a contract that was signed by owners of corporation in their individual capacities).

- 16 -

Even if the court found the arbitration clause enforceable against BGP as a non-signatory, the present dispute does not fall within the agreement to arbitrate. See *OPE International*, 258 F.3d at 445.  This lawsuit concerns the defendants' alleged infringement of BGP's copyrights and is not based on, or concerning, the terms of the settlement which merely granted Habeeb rights to act as the "exclusive agent in negotiating and marketing" the show *Cheaters Uncensored*.  Response at 1.  The arbitration clause specifically governs "any dispute *regarding the terms* of the October 3, 2005 settlement or this supplemental settlement."  Appendix to Motion at 29 (emphasis added).  The defendants' position is that the copyright infringement claims arise out of the rights granted by the Settlement Agreement and Supplemental Agreement because "Habeeb had the exclusive right to market the 'Uncensored' episodes of Cheaters which would necessarily entail the use of copyrighted 'Uncensored' episodes of Cheaters."  Brief in Support of Motion at 4.  Then, the defendants contend that "[r]egardless of whether Habeeb is right or not, the dispute obviously arises from the rights Habeeb retained in the settlement agreement. Thus, the dispute is subject to the agreement to arbitrate entered into between the parties." *Id.* at 5.

The court agrees with BGP that "[t]his lawsuit is a copyright infringement case, not a dispute over the terms of the settlement agreement, and BGP does not allege in the complaint that Defendants breached the terms of the settlement

agreement.  Because BGP's claims arise under federal copyright law, and not under the settlement agreement, and can be maintained independently of the contract, they do not fall within the scope of the arbitration clause."  Response at 9 (citing *Coffman v. Provost * Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 725 (E.D. Tex. Apr. 5, 2001)[, *aff'd*, 33 Fed. Appx. 705 (5th Cir.), *cert. denied*, 537 U.S. 880 (2002)]; *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 251-52 (5th Cir. 1998) (finding that a false advertising claim was not covered by an arbitration clause because none of the legal elements of the claim depended on the agreement with the arbitration clause and the action could be maintained without reference to the agreement);  *Pennzoil Exploration & Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1066 (5th Cir. 1998) (citing *Tracer Research Corp. v. National Environmental Services Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) ("[A]n arbitration clause that covered disputes 'arising under' an agreement, but omitted reference to claims 'relating to' an agreement, covered only those disputes 'relating to the interpretation and performance of the contract itself.' . . . The fact that the tort claim would not have arisen 'but for' the parties' licensing agreement is not determinative.  If proven, defendants' continuing use of [plaintiff's] trade secrets would constitute an independent wrong from any breach of the licensing and nondisclosure agreements.") (internal citations omitted) [, *cert. dism'd*, 515 U.S. 1187 (1995)]).  This copyright infringement action can be maintained independent of the Settlement Agreement and

Supplemental Agreement.  The settlement gave Habeeb the exclusive right "to market the 'Uncensored' versions of Cheaters" and the defendants thus argue that he was given the inherent right to use copyrighted material in doing so.  Brief in Support of Motion at 4-5; Appendix to Motion at 28.  However, the record shows that Goldstein's attorney made it clear during the settlement that Goldstein was not granting Habeeb a license to use copyrighted material or assigning any copyrighted interest to Habeeb.  Appendix to Motion at 16-17.  Further, Habeeb admitted that Goldstein was the owner of "all copyright" in the episodes.  *Id.* at 16-17, 28.  Additionally, the Supplemental Agreement clarifies that Habeeb's rights are limited to "negotiating" and "marketing" as "the exclusive agent of Defendants in negotiating and marketing of [*Cheaters Uncensored*]."  *Id.* at 28.  Habeeb was given the "exclusive right to approach potential pay-per-view and premium channel outlets and negotiate the terms of any agreement to broadcast Cheaters Uncensored."  *Id.*  The court agrees with BGP that the "[d]efendants make no attempt to provide any argument – much less evidence – to demonstrate that their infringing internet-based copyright violations relate to negotiations with any pay-per-view or premium channel outlet. Even if Defendants could credibly claim that they were using the videos in such 'marketing,' the settlement agreement did not permit any actual distribution of the copyrighted episodes by Mr. Habeeb over any medium, including the internet." Response at 12.

- 19 -

BGP further contends that even if the arbitration provision is interpreted broadly to cover all disputes relating to the Settlement Agreement and Supplemental Agreement, it still would not cover this copyright dispute because "Mr. Goldstein's attorney made clear that Mr. Goldstein was 'not making an assignment of any copyright interest or intellectual property interest' in signing the settlement agreement. Further, the infringing use at issue involves publishing copyrighted content over the internet – and Mr. Habeeb himself expressly excluded the internet from the scope of the settlement agreement, as shown in the transcript of the settlement agreement reached in open court:"

> THE COURT:  Back on the record.  This agreement that the parties have announced into the record includes paid premium channels on which "Cheaters" uncensored could be shown.  So in other words, the show that is uncensored is part of the deal.  Any other iteration of "Cheaters", the parties committing in good faith to talk about other deals but it's not part expressly of this settlement; is that fair?
>
> MR. HABEEB:  Yes, Your Honor.  And also, if you could exclude the Internet to be sure. Internet is a different situation.
>
> THE COURT:  Internet's different.  We're talking about television.  Television on a TV set.

Response at 10 (internal citation omitted); Appendix to Motion at 19.

This copyright action "is based solely on Defendants' copyright infringements conducted over the internet, and it is undisputed that the settlement agreement does

not afford Defendants any right to distribute, let alone publish, *Cheaters Uncensored* over the internet, the settlement agreement (even if it bound BGP, which it does not) did not convey any rights whatsoever regarding publication over the internet." Response at 10.  BGP's internet-based copyright infringement action is not a "dispute regarding the terms of the October 3, 2005 settlement or this supplemental settlement."  Appendix to Motion at 29.  The defendants have failed to show (1) that "a valid agreement to arbitrate exists between the parties" and (2) that "the dispute in question is within the scope of the arbitration agreement."  *OPE International*, 258 F.3d at 445.  Therefore, BGP cannot be compelled to arbitrate this dispute.

### III.  CONCLUSION

For the reasons stated above, the defendants' motion to compel arbitration and stay all proceedings is denied.

**SO ORDERED.**

May 24, 2022.

A. JOE FISH
Senior United States District Judge

- 21 -