UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOBBY GOLDSTEIN PRODUCTIONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:21-CV-1924-G |
| THOMAS L. HABEEB and ATVD, LLC d/b/a AMERICAN TELEVISION DISTRIBUTION, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff Bobby Goldstein Productions, Inc.'s ("BGP" or the "plaintiff") motion for entry of judgment.  Plaintiff's Motion for Entry of Judgment ("Motion") (docket entry 111).  BGP moves for entry of final judgment pursuant to Federal Rule of Civil Procedure 58 against the defendants Thomas L. Habeeb ("Habeeb") and ATVD, LLC, d/b/a American Television Distribution ("ATVD") (collectively, the "defendants"), specifically asking the court to:  (1) conclude that Habeeb is liable for the $390,000 damages award levied against ATVD; (2) grant BGP $354,868.37 in pre-judgment interest that accrued from May 7, 2008,

through October 27, 2022, and $91.20 in pre-judgment interest for each subsequent

day until judgment is entered; (3) award BGP post-judgment interest; and (4) award

full costs, including reasonable attorney's fees, to BGP.  See *id.*  For the reasons set

forth below, the motion is **GRANTED**.  Judgment in favor of BGP for the full

amount of relief will be entered against both ATVD and Habeeb.  This includes

liability for the $390,000 damages award, $366,997.97 in pre-judgment interest,

post-judgment interest to be determined by the district court after entry of judgment,

and reasonable costs and attorney's fees.

## I. BACKGROUND

For a more detailed summary of this case's facts, see the court's order on the

defendant's motion to compel arbitration.  Motion to Compel Arbitration

Memorandum Opinion and Order (docket entry 40).  Below are the facts pertinent to

this motion.

In 1995, Robert N. Goldstein ("Goldstein") created *Cheaters* and started his

own production company, BGP, to produce and shoot the show.  Plaintiff's Original

Complaint for Copyright Infringement ("Complaint") (docket entry 1) ¶ 9.  *Cheaters*

*Uncensored* is a show comprised of uncensored footage from *Cheaters*.  *Id.*  Goldstein

and Habeeb collaborated on *Cheaters*.  Brief in Support of Defendants' Motion to

Compel Arbitration ("Brief in Support of Motion") (docket entry 22) at 1.  Habeeb is

the president and managing member of ATVD, which is a Texas limited liability

company.  Joint Pretrial Order (docket entry 81) at 5.  ATVD, however, forfeited its corporate privileges on January 29, 2016, for failing "to file a franchise tax report and/or pay franchise taxes[,]" and its "corporate privileges were not revived by the Texas Secretary of State before BGP filed this lawsuit." *Id.* at 6.

On August 18, 2021, BGP filed a complaint against Habeeb and ATVD, alleging that the defendants committed direct, contributory, and vicarious copyright infringement by posting videos online that contained BGP's copyrighted material, specifically from *Cheaters Uncensored*.  *See* Complaint.  On October 20, 2022, the parties stipulated that the court, rather than the jury, should decide post-trial the question of whether Habeeb is liable for any or all of ATVD's debts based on ATVD losing its corporate charter, assuming that the jury returned a verdict in favor of BGP. Joint Submission Regarding the Court's October 19, 2022 Order (docket entry 93) at 1-2.  Furthermore, on October 27, 2022, BGP withdrew its claims that ATVD committed vicarious and contributory copyright infringement.  Plaintiff's Requested Edits to the Court's [Proposed] Instructions to the Jury and Verdict Form (docket entry 106) at 1.  On October 27, 2022, the jury returned a verdict in favor of BGP and against ATVD, awarding BGP $390,000 in statutory damages.  Verdict (docket entry 109) at 48-49.

BGP filed its motion for entry of judgment on October 31, 2022.  In it, BGP alleges that:  (1) Habeeb is liable for the $390,000 damages award levied against

ATVD because it is a debt of ATVD's that it incurred after ATVD forfeited its corporate privileges and before it reinstated its corporate charter; (2) pursuant to 28 U.S.C. § 1961, the court should award BGP $354,868.37 in pre-judgment interest for the period of May 7, 2008, through October 27, 2022, and $91.20 for each day thereafter until judgment is entered, because the Copyright Act does not preclude pre-judgment interest and awarding pre-judgment interest in this case furthers the congressional policies of the Copyright Act; (3) pursuant to section 1961, the court should award BGP post-judgment interest on the entire amount of relief sought; and (4) the court should award BGP, as the prevailing party, full costs and reasonable attorney's fees.  *See* Motion.

The defendants filed their response to BGP's motion for entry of judgment on November 3, 2022.  In it, the defendants first contend that the court should not enter judgment against Habeeb individually, because ATVD's debt was not incurred after it forfeited its corporate charter, ATVD never revived its corporate charter, and copyright infringement is not a debt under Texas Tax Code § 171.255(a).  Response to Plaintiff's Motion for Judgment ("Response") (docket entry 113) at 2-7.  The defendants then argue that if the court determines that ATVD's debt occurred when the verdict was entered against it, pre-judgment interest should be calculated from the date of the verdict.  *Id.* at 7.[*]

---

[*]    In their response to BGP's motion for entry of judgment, the defendants also ask the court to:  (1) set aside the jury's finding that the defendants did not have

## II. ANALYSIS

### A. Habeeb is Liable for the $390,000 Award Against ATVD

BGP first asks the court to enter final judgment that Habeeb is liable for all or part of the $390,000 award against ATVD under section 171.255(a) because the award is a debt of ATVD's that it incurred after ATVD forfeited its corporate privileges and before it reinstated its corporate charter. Motion at 1. In relevant part, Texas Tax Code section 171.255 states:

> (a) If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.
>
> (b) The liability of a director or officer is in the same manner and to the same extent as if the director or officer were a partner and the corporation were a partnership.
>
> (c) A director or officer is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred:

---

an express license to use BGP's copyrighted material, arguing that this finding was against the great weight of the evidence; and (2) set aside both the court's prior ruling denying the defendants' motion to compel arbitration and the jury's verdict in favor of BGP and refer the case to arbitration. Response at 7-8. "A request for a court order must be made by motion." FED. R. CIV. P. 7(b)(1). Here, the defendants have requested court orders in their response to BGP's motion for entry of judgment, not in a motion submitted with the court. The defendants, therefore, have improperly brought these requests, and the court does not address these issues.

- 5 -

> (1) over the director's objection; or
>
> (2) without the director's knowledge and that the
> exercise of reasonable diligence to become
> acquainted with the affairs of the corporation would
> not have revealed the intention to create the debt.

TEX. TAX CODE § 171.255(a)-(c).

What is considered a "debt" and when that "debt" was created or incurred under section 171.255(a) has varied over time. Before 1987, Texas courts held "that debts were considered created or incurred at the time the relevant contractual obligations were incurred." *Hovel v. Batzri*, 490 S.W.3d 132, 138 (Tex. App. – Houston [1st Dist.] 2016, pet. denied). During this time period, however, courts applied a "'relation-back' doctrine that allowed future liquidated debts to relate back to the execution of the agreement through which damages were owed." *Id.* at 139.

In 1987, the Texas Legislature "adopted a narrow definition of 'debt' within the Tax Code as 'any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand.'" *Hovel*, 490 S.W.3d at 140 (quoting Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, sec. 171.109(a)(3), 1987 TEX. Gen. Laws 1734, 1735, *repealed by* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, sec. 171.109(a)(3), 2006 TEX. Gen. Laws 1, 24 (effective January 1, 2008)). Because the Texas Legislature created a narrow definition of "debt" under section 171.255(a), Texas courts began to reject the "relation-back" doctrine's application to the term "debt;" however, some courts

- 6 -

instead applied the doctrine to the phrase "created or incurred" in section 171.255(a). *Hovel*, 490 S.W.3d at 140-142. Under this method, "the debt was the judgment but it was created or incurred at the time the conduct occurred or contract was executed." *Id.* at 143.

In 2008, the Texas Legislature repealed the narrower definition of what a "debt" is under section 171.255. *Id.* at 142. Subsequently, "the 'relation-back' doctrine reemerged to avoid individual liability for pre-forfeiture acts that lead to post-forfeiture judgments." *Id.* Texas courts' utilization of the "relation back" doctrine "demonstrate[s] application of the rule of strict construction to protect a party facing a penalty through a construction of Section 171.255 in that party's favor." *Id.* at 143.

In this case, it is undisputed that: (1) Habeeb is the president and managing member of ATVD; (2) on January 29, 2016, ATVD forfeited its corporate privileges because it failed to file a franchise tax report and/or pay franchise taxes; and (3) the Texas Secretary of State did not revive ATVD's corporate privileges before BGP filed the current lawsuit. Joint Pretrial Order at 5-6. The relevant issues for this motion, therefore, are: (1) is the jury's finding that ATVD committed copyright infringement and its award of $390,000 in damages to BGP a "debt" under section 171.255(a); (2) if it is a debt, did any of the debt occur after ATVD forfeited its corporate charter and does the relation-back doctrine apply to that portion of the debt; and (3) if any or all

of the debt occurred after ATVD forfeited its corporate privileges, is Habeeb liable for the entire $390,000 award or only a portion of it?

### 1. The $390,000 Award is a "Debt"

The defendants argue that Habeeb cannot be liable for any of the $390,000 award against ATVD because copyright infringement is not a "debt" under section 171.255. Response at 6. The defendants assert that "[t]he jury specifically found that the copyright infringement was not willful[,]" and instead the evidence demonstrates that the infringement "was more akin to tort liability based on negligence." *Id.* Consequently, because ATVD did not commit an intentional tort and directors and officers cannot be held personally liable for torts based on negligence under section 171.255, Habeeb cannot be held liable for ATVD's copyright infringement. *Id.*

BGP responds by arguing that the defendants "incorrectly confuse[] 'willful' with 'intentional,' . . . advanc[ing] the flawed argument that the absence of willfulness with respect to copyright infringement equates to copyright 'negligence.'" Plaintiff's Reply in Support of Motion for Entry of Judgment ("Reply") (docket entry 114) at 8. Instead, BGP avers, "copyright infringement is a strict liability offense . . . *not* a tort based on negligence." *Id.* (emphasis in original). Furthermore, BGP contends that "ATVD's infringement was not unknowing or unintentional. . . . Marshall Hays

- 8 -

testified that Mr. Habeeb was responsible for authorizing" the posting of BGP's copyrighted material.  *Id.* at 9.

Whether the $390,000 award is a debt under section 171.55 depends on what type of tort copyright infringement is.  It is undisputed that courts can conclude that directors and officers are liable for judgment-debts based on contractual duties under section 171.255.  See, *e.g.*, *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 125-26, 135 (Tex. App. – Fort Worth 2016, no pet.) ("The lease amendment was signed in August 2009.  Thus, the debt" arising from the breached lease "was created or incurred in August 2009 . . . . Tariq is personally liable for the debt under section 171.255(a)."); *Hovel*, 490 S.W.3d at 134 (applying section 171.255 to a judgment-debt arising from contractual claims); *Viajes Gerpa, S.A. v. Fazeli*, 522 S.W.3d 524, 535-537 (Tex. App. – Houston [14th Dist.] 2016, pet. denied) (applying section 171.255 to a breach of contract).  It is also undisputed that although "Section 171.255[a] makes the directors and officers liable for the debts of a corporation whose corporate privileges have been forfeited for failing to pay its franchise taxes . . .[,] it does not apply to tort judgments predicated on negligence liability." *Williams v. Adams*, 74 S.W.3d 437, 441-42 (Tex. App. – Corpus Christi-Edinburg 2002, pet. denied).

It is unclear, however, whether section 171.255 applies to judgment-debts based exclusively on non-negligent torts, as "[o]nly a few courts have addressed

- 9 -

whether section 171.255 applies to contractual strangers with only tort claims being asserted[.]" *Nationwide Property & Casualty Insurance Company v. Revive Manufacturing, LLC*, No. 02-17-00148-CV, 2018 WL 2248667, at *7 (Tex. App. – Fort Worth May 17, 2018, no pet.) (mem. op.) (internal quotation omitted).   Furthermore, the courts that have addressed the issue do not agree.   See, *e.g.*, *In re Trammell*, 246 S.W.3d 815, 822 (Tex. App. – Dallas 2008, orig. proceeding) ("[S]ection 171.255 does not apply to involuntary debts like tort judgments."); *Benbow v. Al-Barnawi*, No. 13-20-00131-CV, 2021 WL 3556214, at *3 (Tex. App. – Corpus Christi-Edinburg Aug. 12, 2021, no pet.) (mem. op.) ("[A] corporate 'debt' under [section] 171.255 includes liability for fraud claims because, unlike a negligence claim, fraudulent conduct is intentional."); *Linder v. Assured Enterprises, Inc.*, No. H-20-CV-1363, 2021 WL 5155685, at *5 (S.D. Tex. June 8, 2021) ("[I]t appears questionable whether noncontractual claims, such as statutory violations and tort claims, can lead to individual liability under section 171.255.").

Adding to this case's uniqueness is that copyright infringement is neither an intentional tort nor a tort based on negligence; instead, it is a strict liability tort.   See *Guzman v. Hacienda Records & Recording Studio, Inc.*, No. 6-12-CV-42, 2014 WL 6982331, at *5 n.9 (S.D. Tex. Dec. 9, 2014) (citing *Educational Testing Service v. Simon*, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. April 12, 1999), *aff'd*, 808 F.3d 1031 (5th Cir. 2015)).   Whether a strict liability tort is a "debt" under section 171.255 is

- 10 -

an issue of first impression; however, Texas courts have laid a foundation that the court can use to assess whether the defendants' copyright infringement, as a strict liability tort, is a debt under section 171.255.

Section 171.255 supports three public-policy goals: "first, to motivate corporate officers and directors to ensure that franchise taxes are paid; second, to protect those dealing with the corporation; and third, to hold those directors and officers liable who have abused the corporate privilege by continuing to create and incur debts" after failing to pay their franchise tax. *Hovel*, 490 S.W.3d at 145 (internal quotation omitted). Furthermore, "[t]he Texas Supreme Court has noted that the purpose of section 171.255 is 'to prevent wrongful acts of culpable officers of a corporation[.]'" *Ranzy v. Extra Cash of Texas, Inc.*, No. H-09-CV-3334, 2011 WL 6719881, at *11 (S.D. Tex. Dec. 21, 2011) (quoting *Schwab v. Schlumberger Well Surveying Corporation*, 198 S.W.2d 79, 81-82 (Tex. 1946)), *on reconsideration in part for other reasons*, No. H-09-CV-3334, 2012 WL 1015923 (S.D. Tex. Mar. 22, 2012).

"Because Section 171.255 is a penal statute," however, courts "must 'strictly construe' any ambiguity in favor of the party penalized by it." *Hovel*, 490 S.W.3d at 136. Courts, therefore, cannot stretch section 171.255 "beyond the clear import of" its language. *Schwab*, 198 S.W.2d at 81. This "does not mean that each individual term must be read narrowly. It means that, when a statutory provision is unclear, the

statute is read in its entirety in a way that benefits the party facing the possibility of a penalty if a fair reading permits it." *Hovel*, 490 S.W.3d at 137.

Until 2002, whether section 171.255 applied to unintentional torts remained largely unanswered. See *Williams*, 74 S.W.3d at 439. In coming to the conclusion that section 171.255's language "indicates that [it] was not intended to apply to judgment debts predicated on negligence liability[,]" the *Williams* court interpreted section 171.255(a) in light of section 171.255(c). *Id.* at 441. Interpreting the statute as a whole, the court explained how corporate officers "cannot lay behind the log and be immune from personal accountability on the basis of ignorance if such ignorance is shown to be unreasonable. The exception, in effect, holds the decisionmakers liable for debts which they exercised, or at least had the ability to exercise, some control over incurring[.]" *Id.* at 441-42 (internal quotation omitted).

The *Williams* court continued by looking to how the Texas Supreme Court interpreted section 171.255's predecessor statute. The Texas Supreme Court found that under the predecessor statute, corporate officers could be personally liable by "'consenting to and approving [] debts of the corporation where knowledge of their creation is shown to have come to them in the regular course of the business of the corporation . . . . They had only to disapprove and disavow the debts to avoid personal liability[.]'" *Williams*, 74 S.W.3d at 442 (quoting *First National Bank of Boston v. Silberstein*, 398 S.W.2d 914, 916 (Tex. 1966)).

In light of section 171.255's support of public-policy, its purpose, and prior case law's interpretation of the statute, the court concludes that the $390,000 award levied against ATVD based on copyright infringement, a strict liability tort, is a debt under section 171.255.  First, given section 171.255's support of the three public-policy goals outlined above and the nature of the statute's purpose of preventing wrongful acts of guilty corporate officers, the defendants' actions place this case squarely within the statute's purview.  Although neither party has provided evidence as to whether ATVD ever paid its franchise tax report and/or paid franchise taxes after losing its corporate privileges, in their Joint Pretrial Order, the parties stipulated that the Texas Secretary of State had not revived ATVD's corporate privileges before BGP filed its lawsuit.  Joint Pretrial Order at 6.  Given that the first public-policy goal is to motivate corporate officers and directors to ensure that franchise taxes are paid, the defendants' failure to pay, or prove that they have paid, franchise taxes, falls squarely into section 171.255's purpose in preventing wrongful acts of culpable corporate officers.

Furthermore, the parties stipulated that ATVD posted BGP's copyrighted material on YouTube and Dailymotion between 2006 and 2008, that BGP's counsel sent the defendants a cease-and-desist letter on April 21, 2021, and that BGP's copyrighted material remained on the internet until approximately July 5, 2021. Joint Pretrial Order at 7-8, 12.  BGP, therefore, had no choice but to interact with

- 13 -

ATVD during this time period, which includes when ATVD lost its corporate charter in 2016, in order to prevent the defendants from using its copyrighted material. As such, the second public-policy goal that sections 171.55 supports – protecting those dealing with corporations – and the statute's purpose apply in this case, as the statute would protect BGP in its dealings with ATVD. Finally, as discussed further below, Habeeb abused corporate privilege by continuing to incur debts after ATVD forfeited its corporate privileges, as it committed copyright infringement after 2016. The third public-policy goal that section 171.255 supports – holding directors and officers liable for abusing corporate privileges by creating or incurring debts after failing to pay franchise taxes – and the statute's purpose, therefore, are also applicable as they would protect BGP and hold Habeeb and ATVD accountable for their abuse.

Along with these public-policy goals that section 171.255 supports, Texas courts' interpretation of section 171.255 indicates that the $390,000 award levied against ATVD falls under the statute. In interpreting section 171.255, courts have emphasized the importance of a defendant's actions being intentional. See, *e.g.*, *Benbow*, 2021 WL 3556214, at *3 ("[A] corporate 'debt' under [section] 171.255 includes liability for fraud claims because, unlike a negligence claim, fraudulent conduct is intentional."); *Tryco Enterprises, Inc. v. Robinson*, 390 S.W.3d 497, 518 (Tex. App. – Houston [1st Dist.] 2012, pet. dism'd) (Keyes, J., concurring) ("[N]egligence, unlike breach of fiduciary duty or fraud, is not an intentional tort for

- 14 -

which a partner might be held liable for the acts of a partnership, as required for

liability under section 171.255."); *Williams*, 74 S.W.3d at 441-42 (construing section

171.255's to include intentional conduct but not "conduct that is merely negligent.").

Furthermore, also in interpreting section 171.255, courts have underscored

how judgments cannot be a debt under the statute when a defendant did not act,

acted negligently, or had no knowledge of the corporation's actions that led to the

judgment.  In concluding that judgments based on negligence are not debts under

section 171.255, the *Williams* court repeatedly emphasized the importance of a

defendant either performing some action involved in the judgment or having

knowledge of the corporation's actions that led to the judgment.  *Williams*, 74

S.W.3d at 441-42.  The court acknowledged that "the statute provides an exception

to the liability of the officer or director for debts of the corporation in section

171.255(c) to the effect that one will not be liable for those debts that are incurred

without the officer's or directors knowledge or consent."  *Id.* at 441.  The court

continued, noting that the Texas Legislature "envisioned personal liability only for

debts created or incurred through some sort of 'affairs of the corporation' about

which the director or officer in question had some knowledge and control."  *Id.* at

441-42 (internal quotation omitted).

The *Williams* court further indicated that section 171.255 creates "liability

which results from and is attributable to the acts of [the defendants].  They had only

- 15 -

to disapprove and disavow the debts to avoid personal liability; but having consented to and approved the debts, they become personally liable therefore." *Id.* (internal quotation omitted).  Other courts have followed the *Williams* court's analysis.  See *PACCAR Financial Corporation v. Potter*, 239 S.W.3d 879, 884 (Tex. App. – Dallas 2007, no pet.) (concluding that directors and officers can be liable under section 171.255 for "debts that *could have been created* with the officer or director's knowledge, approval and consent.") (italicization in original) (internal quotation omitted); *Benbow*, 2021 WL 3556214, at *3; *In re Trammell*, 246 S.W.3d at 822.

Texas courts' interpretations of section 171.255 indicate that the $390,000 award is a debt under section 171.255.  Although the judgment is not based on a breach of contract or an intentional tort, ATVD's copyright infringement and Habeeb's actions as ATVD's president and managing member mirror case law's interpretation of why certain judgments are debts under section 171.255.  Similar to the intentional nature that the courts described in *Benbow*, *Tyrco Enterprises*, and *Williams*, here, the defendants' actions were intentional, in the volitional sense, throughout.  It is undisputed that ATVD created trailers containing BGP's copyrighted material, that someone at ATVD authorized and posted the trailers containing BGP's copyrighted material on ATVD's personally owned YouTube and Dailymotion accounts, and that the trailers were available on YouTube from 2006

until approximately May 12, 2021, and on Dailymotion from 2006 through July 5, 2021.  Joint Pretrial Order at 7-8, 12.

It is immaterial that the jury found ATVD's actions were not willful, in the senses that ATVD "knew that [its] actions constituted infringement of BGP's copyright(s) or that [ATVD] recklessly disregarded the possibility that [its] actions infringed BGP's copyright(s)."  Verdict at 38, 44-45.  The defendants' knowledge of whether they were committing copyright infringement or reckless disregard of that fact is irrelevant.  It is undisputed that ATVD intended to bring about the conduct that caused the copyright infringement – creating the trailers with BGP's copyrighted material, uploading the trailers to ATVD's personal YouTube and Dailymotion accounts starting in 2006, and leaving the trailers online until 2021, about 15 years later.  Although copyright infringement is a strict liability tort, and not an intentional tort, the defendants' actions were clearly intentional, bringing them under section 171.255's purview.

Furthermore, just as the *Williams*, *PACCAR Financial Corporation*, and *Benbow* courts underscored the importance of officers and directors either having been involved in the actions that led to the judgment, had knowledge or approved those actions, or unreasonably ignored the corporation's actions, here, Habeeb either approved of ATVD's uploading of the trailers containing BGP's copyrighted material or unreasonably ignored ATVD's actions.  Although the jury did not find Habeeb

- 17 -

vicariously liable for ATVD's direct copyright infringement because Habeeb did not profit from ATVD's infringement, the jury did find that Habeeb either controlled ATVD's copyright infringing actions or he failed to exercise his right and ability to prevent ATVD's infringement.  Verdict at 6-11.  All Habeeb had to do was "disapprove and disavow the debts to avoid personal liability."  *Williams*, 74 S.W.3d at 442 (internal quotation omitted).

Moreover, even if Habeeb did not personally upload or approve the videos, he cannot escape liability for what appears to be unreasonable ignorance.  Parts of BGP's copyrighted material were on ATVD's personal online accounts for 15 years, during which Habeeb was ATVD's president and managing member.  Habeeb did not have to have personally participated in uploading the videos to be personally liable, see *In re Trammell*, 246 S.W.3d at 822, and he "cannot lay behind the log and be immune from personal accountability on the basis of ignorance if such ignorance is shown to be unreasonable[,]"  *Williams*, 74 S.W.3d at 441 (internal quotation omitted).

As such, the court concludes that the $390,000 damages award levied against ATVD for copyright infringement is a debt under section 171.255.  Although copyright infringement is a strict liability tort, analyzing this case's facts in light of section 171.255's support of the three public-policy goals outlined above, the statute's purpose, and prior courts' interpretations of the statute indicates that the defendants' actions fall squarely under the statute.

- 18 -

2.  Part of ATVD's Debt Occurred After it Forfeited its Corporate Charter and the
Relation-Back Doctrine Does Not Apply to Any of the Debt

The defendants next argue that even if the $390,000 award is a debt under

section 171.255, the debt was incurred before ATVD forfeited its corporate

privileges.  The defendants note that under section 171.255 the debt "must be

incurred after the date on which the report, tax, or penalty is due[,]" and the debt in

this case "was incurred in 2005 and 2006[,]" before ATVD forfeited its corporate

privileges.  Response at 3.  The defendants argue that "Texas courts have held that a

debt is incurred when the tortious conduct, injury, or the breach of contract occurred

and, therefore, the director or officer is not individually liable under section

171.255(a)."  *Id.* (cleaned up).  The defendants contend that Texas courts have also

concluded that post-forfeiture breaches or judgments relate back to pre-forfeiture

actions and that in this case, "there is no dispute that the acts complained of in this

lawsuit arose in 2005 and 2006, well before the 2016 forfeiture of ATVD's corporate

privileges."  *Id.* at 3-4.

BGP argues that there are three reasons why ATVD became liable for a debt

after it forfeited its corporate privileges.  First, BGP avers that contrary to the

defendants "assum[ing] that ATVD's infringement occurred only in 2005 and 2006,

. . . copyright infringement is an ongoing tort."  Reply at 3.  BGP points out that the

Supreme Court has held "that the separate-accrual rule" applies to the copyright

statute of limitations, meaning that "when a defendant commits successive [copyright

infringement] violations, the statute of limitations runs separately from each violation.  Each time an infringing work is reproduced or distributed, the infringer commits a new wrong.  Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs."  *Id.* (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)).

According to BGP, it is undisputed that the videos remained on ATVD's YouTube and Dailymotion accounts until 2021, that evidence at trial showed that there were over 2.6 million views of BGP's copyrighted material before ATVD removed the videos from the internet, and that Scott Ricamore created copies of BGP's copyrighted material in 2021, through screen shots and recordings, on behalf of ATVD.  Reply at 3-4.  ATVD, therefore, committed distinct counts of copyright infringement each time it reproduced or distributed BGP's copyrighted material, which continued to occur after ATVD forfeited its corporate privileges in 2016.  *Id.*

Next, BGP argues that ATVD's debt occurred after it forfeited its corporate privileges because the debt "was reduced to a sum certain" when the jury levied the $390,000 judgment against it on October 27, 2022.  Reply at 4.  ATVD contends that the Texas Supreme Court has never adopted the "relation back" doctrine that the defendants refer to and that the defendants cite non-binding contract cases to support their "relation back" argument.  *Id.*  Instead, "the Texas Supreme Court has defined 'debt' as a *specified* sum of money owing to one person from another,

including not only [an] obligation of [a] debtor to pay but [the] right of [a] creditor to receive and enforce payment." *Id.* at 4-5 (internal quotation omitted) (emphasis in original).  Finally, BGP argues that although the defendants cite cases that "involve contract disputes where the contract at issue set forth the obligations of the parties" to support their relation-back theory, in non-contract cases, "courts have held that the debt under § 171.255 is 'created or incurred' when the debt becomes liquidated (i.e., when the penalty is assessed or the court enters judgment)." *Id.* at 5-6 (citing *Cain v. State*, 882 S.W.2d 515, 519-20 (Tex. App. – Austin 1994, no writ); *Jonnet v. State*, 877 S.W.2d 520, 523 (Tex. App. – Austin 1994, writ denied); *Segarra v. Implemetrics Inc.*, No. 4:13-CV-217, 2013 WL 5936602, at *4 (S.D. Tex. Nov. 5, 2013)).

Whether any of ATVD's debt occurred after it forfeited its corporate charter and if the relation-back doctrine applies to any or all of its debt depends on when ATVD specifically committed copyright infringement.  That is because the Texas Legislature repealed the prior narrow definition of what a "debt" is under section 171.255 that had previously defined it as "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." *Hovel*, 490 S.W.3d at 140-42 (internal quotation omitted).

"[T]he Copyright Act grants the copyright holder exclusive rights to use and to authorize the use of his work in [six] qualified ways . . . . Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." *Sony Corporation of America v. Universal City Studios, Inc.*, 464 U.S. 417, 432-33 (1984) (internal quotation omitted).  In relevant part, the Copyright Act states that:

> the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> > (1) to reproduce the copyrighted work in copies or phonorecords;
> >
> > (2) to prepare derivative works based upon the copyrighted work;
> >
> > (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

17 U.S.C. § 106(1)-(3).

Copyright infringement does not end when a party commits one act of infringement associated with a copyrighted work.  Rather, the court has noted that "[e]ach time an infringing work is reproduced or distributed, the infringer commits a new wrong.  Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Petrella*, 572 U.S. at 671; see also *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief."), *cert. denied*, 508 U.S. 906 (1993).

- 22 -

Furthermore, "even if the statutory language is arguably ambiguous" as to whether digital or electronic transmission of copyrighted material constitutes copyright infringement, "courts have not hesitated to find copyright infringement by distribution in cases of file-sharing or electronic transmission of copyrighted works." *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 968 (N.D. Tex. 2006) (Means, J.) (citing *New York Times Company, Inc. v. Tasini*, 533 U.S. 483, 498 (2001) (concluding that LEXIS/NEXIS had exercised its exclusive right, under the Copyright Act, to distribute copies of copyrighted works by selling copies of the copyrighted work on its online database)); *In re Aimster Copyright Litigation*, 334 F.3d 643, 645 (7th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 551 (N.D. Tex. 1997) (Sanders, J.), *aff'd*, 168 F.3d 486 (5th Cir. 1999) (per curiam)).

In this case, it is undisputed that ATVD posted trailers that included BGP's copyrighted episodes on YouTube and Dailymotion between 2006 and 2008 and that there were over two million views of the episodes that ATVD posted on YouTube and Dailymotion.  Joint Pretrial Order at 7-12.  Furthermore, the parties stipulated that ATVD committed direct copyright infringement of BGP's twenty-six copyrighted episodes and the jury did not find that one of the defendants' affirmative defenses applied to absolve that infringement.  Verdict at 2, 12-36.  Although the jury did not explicitly state when every act of copyright infringement occurred, the court can

conclude from the available evidence that ATVD committed multiple copyright infringement violations associated with each video by:  (1) initially uploading and displaying BGP's copyrighted material on YouTube and Dailymotion without BGP's permission; and (2) distributing BGP's copyrighted material without BGP's permission each time a person viewed an episode online.

Regarding ATVD's initial copyright infringement violations between 2006 and 2008, it violated BGP's exclusive right to reproduce or prepare derivative works of its copyrighted material by posting it online without BGP's permission.  *See* 17 U.S.C. § 106(1)-(2).  Furthermore, each time a person watched one of the videos that ATVD posted on YouTube or Dailymotion, which included BGP's copyrighted material, it committed a separate violation of BGP's exclusive right to distribute its copyrighted material.  See *id.* § 106(3).  As such, between 2006 and 2021, ATVD committed numerous, separate counts of copyright infringement that ultimately became liquidated at the point of the verdict.

The next question is whether any or all of ATVD's various counts of copyright infringement occurred before or after it forfeited its corporate charter and privileges. On November 22, 2022, the court ordered the parties to file supplemental briefing addressing part of this issue, specifically asking "if Habeeb is only personally liable for the views of the copyrighted material after January 29, 2016, how should the court apportion what parts of the $390,000 award and pre-judgment interest Habeeb will

- 24 -

be individually liable for and what ATVD will be separately liable for[?]"  Court's Order for Supplemental Briefing (docket entry 116).  Both parties, however, failed to adequately provide data as to which views occurred pre-2016 and post-2016.

The defendants responded by stating that even if Habeeb is personally liable for ATVD's debt after it forfeited its corporate charter and privileges, the court should not apportion any of the award.  Supplemental Response to Plaintiff's Motion for Judgment (docket entry 117) at 5.  The defendants argue that "all the evidence introduced established that all the views occurred over fifteen years ago." *Id.* According to the defendants, that is because "Plaintiff's Exhibit 12, indicated that all views of the copyrighted material occurred 13-15 years prior to the date of the screen capture, well before January 29, 2016.  Thus, there is no evidence that any views occurred after January 29, 2016." *Id.*

In its reply to the defendants' supplemental brief, BGP argues that the defendants are misstating the record and that nothing in its Exhibit 12 "remotely suggests that the view counts were confined to the period before January 29, 2016." Plaintiff's Reply to Defendants' Supplemental Response to Plaintiff's Motion for Entry of Judgment (docket entry 121) at 1.  Instead, "Scott Ricamore testified at trial that he personally viewed the videos on YouTube after receiving BGP's cease-and-desist letter . . . [and] BGP's counsel was required to visit each video page on ATVD's YouTube and Dailymotion accounts in order to draft its cease-and-desist letter, and

also viewed the videos." *Id.*  Furthermore, "Scott Ricamore testified at trial that he created the screen capture *after* Defendants received BGP's cease-and-desist letter on April 21, 2021.  Thus, the view counts listed on the screen capture included the number of views of the videos up until that date, including the views that occurred after January 29, 2016." *Id.* (emphasis in original).

Consequently, neither party adequately responded to the court's order nor provided specific evidence as to the number of views that occurred pre-forfeiture and post-forfeiture.  Given the evidence presented, the court concludes that it is unlikely that, as the defendants contend, all of the millions of views of the videos posted on YouTube and Dailymotion occurred thirteen to fifteen years before Scott Ricamore made his screen capture and that no views occurred after 2016, when ATVD forfeited its corporate charter and privileges.  Furthermore, BGP has pointed to at least one view that occurred after 2016, as Scott Ricamore testified that he personally viewed the videos after 2016 in response to receiving BGP's cease-and-desist letter.  The court, therefore, concludes that at least some of the views of the videos that ATVD posted occurred after 2016.  As such, ATVD committed copyright infringement after 2016 because it distributed the video without BGP's permission.

Finally, the last question is whether the relation-back doctrine applies to ATVD's copyright infringement that occurred post-2016.  The relation-back doctrine typically gives courts the ability to connect "future liquidated debts" to pre-forfeiture

agreements and contracts.  *Hovel*, 490 S.W.3d at 139.  Since the Texas Legislature repealed its prior definition of "debt" under section 171.255, courts specifically use the relation-back doctrine "to avoid individual liability for pre-forfeiture acts that lead to post-forfeiture judgments."  *Id.* at 142.  In *Hovel*, the court found that the relation-back doctrine applied because "[a]ll of the conduct underlying [the Hovels'] claim, as well as the agreement, occurred preforfeiture.  The only occurrence post-forfeiture was entry of the judgment to liquidate the damages claim."  *Id.* at 145; see also *B Choice Limited v. Epicentre Development Associates, LLC*, No. H-14-CV-2096, 2017 WL 1227313, at *18 (S.D. Tex. Mar. 3, 2017) (concluding that "as in *Hovel*, the conduct underlying their claims and the signing of the promissory note all occurred prior to EDA's forfeiture.") (cleaned up), *report and recommendation adopted*, No. H-14-CV-2096, 2017 WL 1160512 (S.D. Tex. Mar. 29, 2017); *Haynes v. Gay*, No. 05-17-00136-CV, 2018 WL 774334, at *2 (Tex. App. – Dallas Feb. 8, 2018, no pet.) (mem. op.).

Conversely, where courts have found the relation-back doctrine does not apply, they emphasized the ongoing nature of violations that continue after forfeiture.  In *Jonnet*, the court considered *arguendo* whether the relation-back doctrine applied and rejected the theory, stating how the relevant statute dictates:

> that each day of a continuing violation constitutes a separate violation . . . . Accordingly, the penalties assessed by the Commission were based not just on the [defendant's] initial violation of Rule 14 on December 1,

> 1985, but on BRO's *ongoing* violation of Rule 14, which
> continued day after day for nearly four years.  Unlike the
> relation-back cases cited above in which the debt can be
> said to relate back to a single date – the date of the written
> instrument – the conduct underlying the Commission's
> order is of a continuous nature, with no *single* date to which
> the penalty can relate back.

*Jonnet*, 877 S.W.2d at 524 (emphasis in original); see also *Williams*, 74 S.W.3d at

443 (distinguishing a line of cases that did not apply the relation-back doctrine).

In this case, the court concludes that the relation-back doctrine does not apply

because ATVD committed multiple counts of copyright infringement that, although

beginning pre-2016, continued after ATVD forfeited its corporate charter and

privileges.  Copyright infringement is an ongoing tort, in the sense that "[e]ach time

an infringing work is reproduced or distributed, the infringer commits a new wrong.

Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong

occurs." *Petrella*, 572 U.S. at 671.  Hence, ATVD did not commit one, distinct count

of copyright infringement; instead, each time it uploaded a video that contained

BGP's copyrighted material and each time someone watched one of those videos,

ATVD committed a separate copyright violation.

Copyright infringement's continuous nature makes this case more like cases

where courts have found that the relation-back doctrine did not apply than cases

where courts have found that the doctrine did apply.  Similar to *Jonnet*, ATVD's

copyright infringement is based not just on its initial uploading of videos containing

BGP's copyrighted material, but also each view of the videos that continued for 15 years.  Whereas in cases where courts applied the relation-back doctrine, the courts emphasized how all of the underlying conduct that led to post-forfeiture judgments occurred pre-forfeiture, in this case ATVD's conduct cannot relate back to strictly pre-forfeiture actions.  See *Hovel*, 490 S.W.3d at 145; *B Choice Limited*, 2017 WL 1227313 at *18; *Haynes*, 2018 WL 774334 at *2.  There is not a single contract or entity which ATVD entered into agreement with; instead, ATVD's copyright violations occurred continuously, involving new parties post-forfeiture that were not involved pre-forfeiture.

Consequently, ATVD's copyright violations that occurred post-forfeiture do not relate back to its pre-forfeiture conduct.  The parts of ATVD's debt that occurred post-forfeiture, therefore, fall under section 171.255's scope.

### 3.  Habeeb is Liable for the Entire $390,000 Award

The defendants next argue that even if the court concludes that Habeeb is personally liable for any views that occurred post-forfeiture, the court should not apportion any of the $390,000 award.  Specifically, the defendants aver that "there is no evidence that any views occurred after January 29, 2016. . . . Therefore, if the Court determined that Habeeb was personally liable for the views of the copyrighted material the apportionment of views to Habeeb would be none."  Supplemental Response to Plaintiff's Motion for Judgment at 5.  Likewise, BGP responded by

arguing that "apportionment of the award is neither appropriate nor warranted."
Plaintiff's Supplemental Brief in Support of Motion for Entry of Judgment (docket entry 118) at 5.

Although the court ordered the defendants to suggest how the court must apportion the $390,000 award *should* it conclude that Habeeb is only personally liable for the views of BGP's copyrighted material that occurred after January 29, 2016 (when ATVD's forfeiture occurred), *see* Court's Order for Supplemental Briefing, the defendants failed to follow the court's instruction. *See* Supplemental Response to Plaintiff's Motion for Judgment. Instead, the defendants chose to contend that the court should not apportion the $390,000 award, even if Habeeb is personally liable for views of the copyrighted material that occurred post-forfeiture. The defendants took this position despite the fact that apportionment would only benefit Habeeb, as it would shield him from liability for any award connected to copyright infringement that occurred pre-forfeiture. BGP also has not provided a method for apportioning the $390,000 award, instead arguing that the court should not order any apportionment.

Because neither BGP nor the defendants have requested that the court apportion the $390,000 damages award or provided the court with a method for apportioning the sum between Habeeb and ATVD, the court will not embark on this

- 30 -

endeavor.  Instead, the court enters final judgment against both Habeeb and ATVD for the entire $390,000 award.

### B.  BGP is Entitled to Pre-judgment Interest

BGP next asks the court to award it pre-judgment interest pursuant to section 1961 because the Copyright Act does not preclude pre-judgment interest and several factors weigh in favor of awarding BGP pre-judgment interest.  Motion at 2-3.  BGP argues that these factors include that it incurred damages, pre-judgment interest would help deter the defendants and third-parties from future infringement, and the jury's award did not adequately compensate BGP because of the time that has elapsed since the defendants first committed copyright infringement.  *Id.* at 3-4.  BGP requests a "conservative calculation of [pre-judgment] interest" that begins on May 7, 2008, the day that ATVD uploaded the last video which contained copyrighted *Cheaters Uncensored* footage.  *Id.* at 5.

Finally, BGP avers that federal law dictates what rate should be used to calculate the pre-judgment interest award and because there is no standard federal rate the court should follow the rate that section 1961 specifies, which is "equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment and to be compounded annually."  Motion at 5 (internal quotation omitted).  BPG states that the interest rate was 4.57% for October 24, 2022, through October 30, 2022.  *Id.* at 5-6.  Accordingly, "[f]rom May

7, 2008 through October 27, 2022, [pre-judgment] interest on the statutory damages award totals $354,868.37" and "[f]or each day thereafter until the judgment is signed, the daily [pre-judgment] interest amount is $91.20." *Id.* at 6.  The defendants do not contest that BGP is entitled to pre-judgment interest.  Instead, the defendants "contend that the 'debt' for purposes of determining Habeeb's liability should be determined to be in 2006," but if the court "determine[s] that the verdict is the point of the 'debt' then pre-judgment interest should be calculated from the point of the verdict."  Response at 7.

"The determination of whether [pre-judgment] interest should be awarded requires a two-step analysis:  does the federal act creating the cause of action preclude an award of [pre-judgment] interest, and if not, does an award of [pre-judgment] interest further the congressional policies of the federal act."  *Carpenters District Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir. 1994), *cert. denied*, 513 U.S. 1126 (1995).  "If [pre-judgment] interest can be awarded under the two-prong test, whether such interest is awarded in any given case is within the court's discretion."  *Id.*

Because the defendants do not dispute both that BGP is entitled to pre-judgment interest or BGP's recommended formula for calculating pre-judgment interest, the court accepts that BGP is entitled to pre-judgment interest at a rate equal to 4.57%.  The defendants, however, do contest the date at which the court should

calculate BGP's pre-judgment interest from, arguing that if the court "determine[s] that the verdict is the point of the 'debt' then pre-judgment interest should be calculated from the point of the verdict."  Response at 7.  The court has not determined that the verdict is the point of the debt but that it is the point that the defendants' debt became liquidated.  *See* Memorandum Opinion and Order, *supra*, at 24.  The court concluded that the defendants' debt stems from multiple copyright infringement violations, beginning the first time ATVD uploaded a video containing BGP's copyrighted material and continuing until the last person viewed one of ATVD's videos.  See *id.* at 24-26.  The court, therefore, accepts May 7, 2008, the date BGP contends for and which is well after ATVD first uploaded a video containing BGP's copyrighted material, as the date at which pre-judgment interest should begin.

Consequently, the court concludes that BGP is entitled to pre-judgment interest on the statutory damages award from May 7, 2008 through October 27, 2022, totaling $354,868.37.  Furthermore, BGP is entitled to pre-judgment interest for each day after October 27, 2022, and until this judgment is entered, at a rate of $91.20 per day.  This equals $12,129.60 ($91.20 x 133 days).  BGP's total pre-judgment interest, therefore, is $366,997.97 ($354,868.37 + $12,129.60).  Finally, because neither BGP nor the defendants have requested that the court apportion any fees or provide the court with a method for apportioning any monetary amounts

between Habeeb and ATVD, the court will not apportion the pre-judgment interest. Instead, the court enters final judgment against both Habeeb and ATVD for the entire $366,997.97 in pre-judgment interest.

### C.  BGP is Entitled to Post-judgment Interest

BGP next asks the court to award it post-judgment interest on the $390,000 award, $366,997.97 in pre-judgment interest, costs, and attorney's fees.  Motion at 6. BGP avers that section 1961 mandates the court award BGP post-judgment interest on its damages, pre-judgment interest, and attorney's fees and that the court calculate this interest at the rate that the statute prescribes.  *Id.*  The defendants do not object to the court awarding BGP post-judgment interest or the method that BGP recommends that the court use to calculate this award.  *See* Response.

"Federal law governs [post-judgment] interest in federal cases" and "is not discretionary but 'shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield[.]'" *Tricon Energy Limited v. Vinmar International, Limited*, 718 F.3d 448, 456-57 (5th Cir. 2013) (quoting 28 U.S.C. § 1961(a)).  Post-judgment interest is calculated "on the entire amount of the final judgment, including damages, [pre-judgment] interest, and attorney's fees." *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991).

The court, therefore, concludes that BGP is entitled to post-judgment interest on the entire final judgment, including the $390,000 award, pre-judgment interest,

costs, and attorney's fees.  BGP shall receive post-judgment interest at the rate

prescribed by 28 U.S.C. § 1961 from the date judgment is entered.  Finally, as with

the $390,000 award and pre-judgment interest, the court will not apportion these

amounts between Habeeb and ATVD; again, final judgment is entered against both

Habeeb and ATVD for the entire post-judgment interest.

### D.  BGP is Entitled to Full Costs and Reasonable Attorney's Fees

BGP next asks the court for full costs and reasonable attorney's fees.  Motion

at 7.  BGP avers that according to Federal Rule of Civil Procedure 54, "there is a

presumption that the prevailing party will be awarded costs."  *Id.* at 6.  Furthermore,

BGP maintains that the Copyright Act gives the court discretion to award any party,

other than the United States or its officers, full costs and the prevailing party

reasonable attorney's fees, and that this is less an exception and more a rule that

"should be awarded routinely."  *Id.* at 6-7 (internal quotation omitted).  BGP states

that it will confer with the defendants on the amount of costs and attorney's fees the

court should grant and will both "apply to the clerk for taxation of costs by filing a

bill of costs" and "submit[] its motion for attorney's fees within fourteen days after

the entry of judgment."  *Id.* at 7.  The defendants do not object to BGP's request.  *See*

Response.

"Unless a federal statute, these rules, or a court order provides otherwise, costs

– other than attorney's fees – should be allowed to the prevailing party . . . The clerk

- 35 -

may tax costs on 14 days' notice." FED. R. CIV. P. 54(d)(1).  To be entitled to attorney's fees, a party must:  (1) request attorney's fees in its pleadings; and (2) file a timely motion for attorney's fees under Rule 54(d)(2) within fourteen days after the entry of final judgment.  *United Industries, Inc. v. Simon-Hartley, Limited*, 91 F.3d 762, 765-66 (5th Cir. 1996).  Additionally, the Copyright Act instructs that "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof" and "also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.

In its complaint, BGP requests that the court enter judgment against the defendants for reasonable costs and attorney's fees.  Complaint at 22-23.  Because BGP is the prevailing party and the defendants do not dispute that the court should award BGP reasonable costs and attorney's fees, the court concludes that BGP is entitled to both reasonable costs and attorney's fees.  As with the $390,000 award, pre-judgment interest, and post-judgment interest, the court will not apportion these amounts between Habeeb and ATVD, and instead, final judgment is entered against both Habeeb and ATVD for all costs and attorney's fees.

The court, therefore, orders BGP to confer with the defendants on reasonable costs and apply to the clerk for taxation of costs by filing a bill of costs no later than fourteen days after final judgment is entered.  The court also orders BGP to file a motion for reasonable attorney's fees, attaching an affidavit explaining the reasonable

nature of the fees sought, in accordance with Fed. R. Civ. P. 54(d)(2), within fourteen days of entry of judgment.

### III.  CONCLUSION

For the reasons stated above, BGP's motion for entry of judgment is **GRANTED**.  Judgment in favor of BGP for the full amount of the foregoing relief will be entered against both ATVD and Habeeb.  This includes liability for the $390,000 damages award, $366,997.97 in pre-judgment interest, post-judgment interest, and reasonable costs and attorney's fees.

BGP is directed to confer with the defendants on reasonable costs and apply to the clerk for taxation of costs by filing a bill of costs within fourteen days of this date. Furthermore, BGP is directed to file and serve a motion for reasonable attorney's fees, supported by the affidavit of counsel, within fourteen days of this date.

**SO ORDERED**.

March 9, 2023.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**

- 37 -