IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BOBBY GOLDSTEIN PRODUCTIONS, INC., § § § Plaintiff, § § v. § § THOMAS L. HABEEB and ATVD, LLC § d/b/a AMERICAN TELEVISION § DISTRIBUTION § § Defendants. § | Case No. 3:21-cv-01924-G |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This lawsuit arises out of Defendants Thomas L. Habeeb and ATVD, LLC d/b/a American Television Distribution's (ATVD) use of Plaintiff Bobby Goldstein Productions, Inc.'s (BGP) copyrighted material from 26 episodes of *Cheaters Uncensored*, a reality television show featuring couples with one partner who is committing adultery, or "cheating," on the other. *See generally* Compl. (ECF No. 1); Jt. Stip. (ECF No. 89).

Following a three-day trial in October 2022, a jury found (i) ATVD directly infringed BGP's copyrighted material; (ii) none of ATVD's defenses to direct copyright infringement applied; and (iii) BGP was entitled to $390,000 in statutory damages. *See* Verdict (ECF No. 109). Thereafter, the District Court granted BGP's motion for entry of judgment—holding, among other things, that Defendants ATVD and Habeeb "are each independently liable for the statutory

1

damages award, pre-judgment interest, post-judgment interest, full costs, and reasonable attorney's fees." J. (ECF No. 125). The Court directed BGP to file a motion for attorney's fees, attaching an affidavit explaining the reasonable nature of the fees sought, in accordance with Federal Rule of Civil Procedure 54(d)(2). *Id.* BGP complied and filed its Motion for Attorney's Fees (ECF No. 129) under Rule 54 and 17 U.S.C. § 505, seeking an award in the amount of $961,225.14. After resolving some bankruptcy-related delays, Defendants filed a response (ECF No. 140). BGP filed a reply (ECF No. 143). The issues are fully-briefed, and the Motion is ripe for determination.

For the following reasons, the Court should GRANT BGP's motion—in part— and order Defendants to pay BGP $865,101.94 in attorney's fees.

I.

Section 505 of the Copyright Act provides that a district court "may . . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. And while "recovery of attorney's fees is not automatic" in the Fifth Circuit, "attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely." *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008). Relevant factors that inform the court's discretion on whether to award fees include: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313,

326 (5th Cir. 2022) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 539 n.19 (1994)). "[A] finding of willful infringement is not necessary to support an award of attorneys' fees . . . ." *EMI April Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 626 (N.D. Tex. 2008).

Here, the District Court previously determined that BGP is entitled to reasonable attorney's fees under § 505 as the prevailing party. *See* Mem. Op & Order 36 (ECF No. 124) ("Because BGP is the prevailing party and the defendants do not dispute that the court should award BGP reasonable costs and attorney's fees . . . BGP is entitled to both reasonable costs and attorney's fees."). This determination is supported by consideration of the relevant factors which demonstrate that BGP's lawsuit was not frivolous or objectively unreasonable, and BGP acted properly to protect its copyrighted material after it discovered infringement of dozens of episodes of *Cheaters Uncensored* on the internet. By contrast, Defendants unnecessarily prolonged the litigation by advancing frivolous legal arguments and factual contentions and employing tactics that significantly increased the work needed to litigate this matter (and the attorney's fees expended by BGP's counsel) in an attempt to avoid or delay responsibility for their infringement. For example, Defendants filed a motion to compel arbitration purportedly based on a settlement agreement between Robert N. Goldstein and Defendant Habeeb. *See* Mot. (ECF No. 21). However, the Court denied the motion because Defendants failed to demonstrate the arbitration clause was enforceable against BGP—a non-signatory to the settlement agreement—and that, even if it was

3

enforceable against BGP, the parties' dispute did not fall within the scope of the agreement to arbitrate. Mem. Op & Order 8-21 (ECF No. 40). Defendants also failed to cooperate in discovery; they initially denied uploading any of the infringing videos to ATVD's internet accounts, denied knowing about one of ATVD's accounts, failed to preserve copies of all the infringing videos uploaded to ATVD's internet accounts, and claimed that they could not get access to key information about the uploaded videos. This conduct necessitated BGP's filing a motion to compel discovery, *see* Mot. (ECF No. 27), which the Court granted in its entirety following a hearing, *see* Order (ECF No. 43). And after BGP obtained documents and testimony proving that persons working for ATVD created the internet accounts at issue and uploaded the infringing videos, Defendants conceded that they created those accounts and uploaded the videos. Ultimately, Defendants stipulated that BGP had met its burden of proof with respect to the underlying elements required for showing that ATVD directly infringed BGP's copyrights in 26 *Cheaters Uncensored* episodes by posting videos to its internet accounts. Jt. Stip. 1 (ECF No. 89). Given these circumstances, awarding a reasonable attorney's fee to BGP would advance considerations of compensation and deterrence.

II.

The Court utilizes the "lodestar" method in calculating the attorney's fee award. *See Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citations omitted). The lodestar is calculated by multiplying the reasonable

number of hours spent on the case by an attorney by an appropriate hourly rate. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). There is a strong presumption that the lodestar amount is reasonable. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). Because the lodestar is presumed reasonable, it should be modified only in exceptional circumstances. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

### A.

First, the Court considers whether the hourly rates charged by BGP's counsel are reasonable. Rates are reasonable when they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's fees. *SortiumUSA, LLC v. Hunger*, 2015 WL 179025, at *5 (N.D. Tex. Jan. 14, 2015) (Lynn, J.) (*citing Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976); *Vanliner Ins. v. DerMargosian*, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorney's fees)).

Here, BGP was proficiently represented by attorneys from the firm of Bragalone Olejko Saad PC, including name partners Jeffrey R. Bragalone and Daniel F. Olejko. Bragalone is a member of the Texas State Bar and is licensed to practice in the United States District Court for the Northern District of Texas. App., Bragalone Aff. ¶ 16 (ECF No. 130). He has been practicing law for 35 years, with an

5

emphasis on patent and other intellectual property litigation. *Id*. Olejko is a registered patent attorney and has been practicing complex commercial litigation with an emphasis on patent litigation and appellate practice for 15 years. *Id*. ¶ 17. The two partners were assisted by several associate attorneys and paralegals, each with an appropriate level of experience to handle the issues in this case. *See id*. ¶¶ 18-21. Bragalone charged an hourly rate of $787.50 per hour, and Olejko charged $618.75 per hour. Associates charged hourly rates between $337.50 and $412.50, and the one paralegal who billed in this case charged $243.75 per hour. *Id*. at 116-17. Based on the Court's knowledge of rates charged for legal services by Dallas attorneys with the level of skill, competence, and ability of BGP's counsel, and its experience in setting attorney's fees in other cases, the Court determines that the hourly rates charged by BGP's counsel are reasonable.

To support the claimed hourly rates, BGP cites to the American Intellectual Property Law Association's 2021 Report of the Economic Survey, which notes average hourly rates for equity partners in Texas ranging from $339 to $900 and average hourly rates for partner-track attorneys ranging from $354 to $593. Mot. 8 (ECF No. 129). BGP also cites several cases decided in the Northern District, including *Thermotek, Inc. v. Orthoflex, Inc*, where hourly rates up to $650 for attorneys and up to $175 for paralegals were approved, and *Hoiffman v. L & M Arts*, where the hourly rate of $460 was found to be reasonable and other hourly rates were adjusted to between $601 and $810. *Id*. (citing *Thermotek, Inc. v.*

*Orthoflex, Inc.*, 2016 WL 6330429 (N.D. Tex. Oct. 27, 2016) and *Hoffman v. L & M Arts*, 2015 WL 3999171, at *2–3 (N.D. Tex. July 1, 2015)).

Ultimately, the Court finds BGP's reliance on the AIPLA survey and the Northern District cases persuasive. Bragalone's hourly rate—$787.50—and Olejko's hourly rate—$618.75—fall within the range of average rates indicated in the AIPLA's survey. *See Ford Global Techs., LLC v. New World Int'l, Inc.*, 2019 WL 1531759, at *2 (N.D. Tex. Apr. 9, 2019) (relying on AIPLA statistics in reviewing rates charged by attorneys in patent infringement action). And while the rates fall within the high end of the survey's $339 to $900 range, BGP's counsel provides a satisfactory justification; this litigation was more complicated than the typical copyright infringement case, because it involved a complex and uncertain issue concerning the application of the Texas Tax Code. The Court acknowledged this case's distinctively challenging nature several times in its's Memorandum Opinion and Order granting BGP's motion for entry of judgment. *See, e.g.*, Mem. Op. & Order 9-10 (ECF No. 124) ("It is unclear, however, whether section 171.255 applies to judgment-debts based exclusively on non-negligent torts, as '[o]nly a few courts have addressed whether section 171.255 applies to contractual strangers with only tort claims being asserted[.]' . . . Furthermore, the courts that have addressed the issue do not agree."); Mem. Op. & Order 10-11 (ECF No. 124) (characterizing the issues in the case as "unique[]," in part because the question of "[w]hether a strict liability tort is a 'debt' under section 171.255 is an issue of first impression").

Additionally, Defendants do not present persuasive arguments that the charged hourly rates are unreasonable. As BGP points out in its Reply (ECF No. 143), "Defendants do not address the 2021 AIPLA Report or the various cases from this District that have approved rates similar to those charged by BGP's counsel. Instead, Defendants cite outdated statistics from the Texas State Bar from 2015 and 2019, including old statistics related to the median hourly rate for *all attorneys* in the Dallas-Fort Worth-Arlington metropolitan area." Reply 7. But reliance on these general statistics is of limited relevance to the Court's consideration of what constitutes a reasonable attorney's fee in the specialty area of copyright infringement.

B.

Next, the Court considers the reasonableness of the number of hours billed. A party seeking attorney's fees bears the burden of establishing that the number of hours expended were reasonable with adequately recorded time records as evidentiary support. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court uses this time as the benchmark, but should exclude any time that is excessive, duplicative, unnecessary, or not adequately documented. *See id*.

Here, BGP's counsel billed a total of 1,778.9 hours. This includes: 1) 365.2 hours billed by Bragalone; 2) 712.5 hours billed by Olejko; 3) 385.8 hours collectively billed by associates; and 4) 199.2 hours billed by a paralegal. *See* App., Bragalone Decl. 116-17 (ECF No. 130). Defendants generally object that the

8

number of hours are excessive, duplicative, and inadequately documented due to block billing.

      The Court overrules any general objection to excessive hours billed. As discussed above, BGP's counsel incurred significant time due to Defendants' litigation tactics, such as filing the unsuccessful motion to compel and unreasonably resisting discovery before ultimately stipulating that BGP had met its burden of proof with respect to the underlying elements required for showing that ATVD directly infringed BGP's copyrights.

      Defendants specifically object to BGP billing 13.7 hours to draft a discovery deficiency letter in connection to a motion to compel. Resp. 4 (ECF No. 140). Defendants contend 13.7 hours is an excessive and unnecessary amount of time to draft a letter that was only "two and a half pages." *Id*. BGP responds that its counsel did not spend the entirety of 13.7 hours to simply write the letter. Reply 3 (ECF No. 143). Instead, the 13.7 billed hours include time spent communicating with BGP about the relevant issues and devising a strategy, researching the legal issues associated with the motion to compel, and reviewing prior discovery relevant to the motion. *Id*. at 4-5. BGP's contention is supported by the billing records it provides. In the entries addressing time spent on the deficiency letter, BGP specifically itemizes the necessary tasks completed before the responsible associate could start to write the "two and half page" letter. *See* App. 28-30 (ECF No. 130). Based on these records and the Court's own expertise about the time required to

draft an adequately researched and persuasive deficiency letter, the Court rejects Defendants' objection to these 13.7 hours.

Defendants specifically object to BGP billing 72 hours for "legal research for expert report." Resp. 4-5 (ECF No. 140). Defendants contend that 72 hours is excessive and unnecessary because Defendants did not challenge Plaintiff's expert report. BGP responds that while the litigation team spent 72 hours working on the expert report, it ultimately wrote off 41.2 of those hours as "no charge." Reply 3 (ECF No. 143); *see also* App. 13-20 (ECF No. 130). Additionally, BGP argues that the fact that Defendants did not challenge the expert report does not render the time spent on the report unnecessary or excessive. On the contrary, it indicates that the hours were time well spent in ensuring the report was immune from valid evidentiary objections. Again, BGP's records support BGP's contentions. The billing records show the time entries Defendants take issue with all occurred prior to when the report was finalized and served. *See* App. 13-20 (ECF No. 130). BGP spent time on the report to create the best report possible, rather than answering objections afterwards. The Court therefore overrules Defendants' objection to the 72 hours.

Defendants specifically object to the time billed during trial. Defendants contend that the hours billed by associates during trial are excessive and unnecessary, since only Bragalone and Olejko "actually participated in the trial." Resp. 5 (ECF No. 140). Defendants' objection implies that only those attorneys speaking directly to the judge or jury during a trial can be considered to be

10

participating in a way that deserves compensation. But review of the billing records proves otherwise; the associates performed necessary behind-the-scenes work, such as reviewing juror questionnaires, drafting presentation slides for use during expert testimony and closing argument, and reviewing the jury charge. Accordingly, and given that the complexity of the case warrants the assistance of associate attorneys during trial, the Court overrules Defendants' objection to the associates' billed hours during trial.

Finally, Defendants object to one specific billing entry, from October 25, 2022, which records 19.8 hours connected to the following description:

> Meeting with J. Bragalone and M. Douglass regarding Habeeb cross examination outline; prepare for trial; attend first day of trial; research ATVD website on Wayback machine and obtain printouts for use in Habeeb cross-examination; revise B. Goldstein direct examination outline, including adding questions about request for accounting, cease and desist letter, request for information regarding downloads, information provided by Defendants in response to request, PX-13 video, downloads from YouTube and streaming platforms, reasons for downloading videos from YouTube, evidence of downloads from YouTube, reasons for caring if others download videos, artistic control of content on YouTube and Dailymotion, questions about not picking up the phone, questions about response to call, statutory damages, questions about damages from first copyright case, clarification questions about prior day's testimony; correspondence with B. Goldstein regarding updates to direct examination outline; review and reduce M. Hays deposition clip and correspondence with A. Greenberg regarding same; correspondence with B. Zuniga and team regarding juror questionnaires; correspondence with P. Stevenson and M. Douglass regarding edits from M. Einhorn to his presentation slides.

App. 103 (ECF No. 130).

11

The term "block billing" refers to the disfavored "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund,* 2011 WL 487754, at *4 (N.D.Tex. Feb.11, 2011) (Fitzwater, C.J.) (citation omitted). "Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Wherley v. Schellsmidt*, 2014 WL 3513028, at *4 (N.D. Tex. July 16, 2014). The Court agrees with Defendants that this entry is an example of block billing.[1] And the Court's own review of the billing records uncovered a few more entries utilizing block billing, particularly as BGP accounted for their work during trial. In these entries, BGP combines long descriptions of multiple tasks all attributed to one relatively substantial period of time. *See* App. 103-05 (ECF No. 130) (including block-billed entries for 16.80 hours, 19.80 hours, 18.80 hours, and 18.40 hours).

---

[1] Defendants do not point the Court to any other specific entry in which BGP utilized block billing. Rather, Defendants contend that the October 25 entry is "just one example of the many bulk descriptions attributable to bulk time." But it should be noted that "[i]f a party does not object to particular billing entries as inadequately documented, the court is not obliged *sua sponte* to sift through fee records searching for vague entries or block-billing." *Wherley* 2014 WL 3513028, at *4 n. 6; *see also La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 325 (5th Cir. 1995) (holding that district court erred in failing to conduct full analysis of billing records "[a]s to the specific items of which [opposing party] complains").

12

However, the Court finds that when looking at the billing records as a whole, BGP's counsel does not utilize block billing for every entry. Rather, most of the entries are itemized, specific, and even when associated with a long list of multiple tasks, for relatively short periods of time. *See Thermotek, Inc. v. Orthoflex, Inc.*, 2016 WL 6330429, at *10 (N.D. Tex. Oct. 27, 2016) ("Entries between four to six hours are frequently substantiated with descriptions of the different types of work performed during that period.").

In addition to block billing, the Court finds that BGP's billing records include some duplicative and vague entries warranting reduction. Vague entries are "not illuminating as to the subject matter" or "vague as to precisely what was done." *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *11 (N.D. Tex. Dec. 20, 2005), aff'd, 2007 WL 3085028 (5th Cir. Oct. 23, 2007) (citation omitted). Examples such as: "revise memorandum," "review pleadings," "review documents," and "correspondence" are sufficiently vague that a court could accept or reject them in a fee application. *SCA Promotions, Inc. v. Yahoo! Inc.*, 2016 WL 8223206, at *11 (N.D. Tex. Nov. 21, 2016), report and recommendation adopted, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017), aff'd, 2017 WL 11689639 (5th Cir. Nov. 7, 2017). Some entries billed by BGP's counsel are vague and warrant exclusion. *See, e.g.,* App., Bragalone Decl. (ECF No. 130) (entry on 02/23/2021 billing for "Correspondence from client regarding emails related to case," entry for 08/02/2021 billing for "Review complaint for filing," entry on 08/17/21 for "Email with D. Olejko regarding filing complaint."). The billing records also include some

13

duplicative charges. *See, e.g., Id.* (entries by both Olejko and Bragalone on 09/21/2022 charging for correspondence and review and entries by both Olejko and Bragalone on 05/07/2021, 05/10/2021, and 06/02/2021 charging for review of the same email).

On balance, BGP's billing records are consistent with what can reasonably be expected, presenting "detailed time records of the hours expended by each lawyer indicating the nature of the particular work done by each." *Thermotek*, 2016 WL 6330429, at *9. At the same time, as described above, the records include some entries that should be excluded for being duplicative or vague. Accordingly, an overall percentage reduction to the requested award amount—but a relatively low percentage reduction—is warranted. *See, e.g., Paris v. Dallas Airmotive, Inc.*, 2004 WL 2100227, at *9–11 (N.D.Tex. Sept.21, 2004) (Lindsay, J.) (applying percentage reduction because of block billing); *Thermotek, Inc.*, 2016 WL 6330429, at *11 (applying a threshold reduction of 10% to account for block billing and for entries that "are duplicative, excessive, or vaguely recorded.").

Here, to account for entries that constitute block billing, vague entries, and duplicative entries, the Court should apply a 10% reduction to the lodestar figure. *See Barrow,* at *5 ("The reduction [to address block billing] usually ranges between 10% to 30%."); *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) ("[M]any courts reviewing block-billed time entries have performed a percentage reduction either in the number of hours or in the lodestar figure, typically ranging from 10% to 30%."); *Franciscan*

14

*All., Inc. v. Becerra*, 2023 WL 4462049, at *6 (N.D. Tex. July 11, 2023) (O'Connor, J.) ("Upon review of the entries deemed to be block billed by Defendants, the Court finds that the entries in question do include examples of block billing. Therefore, the Court shall apply a five percent reduction in the total lodestar figure to account for the block billing."). A greater reduction is not warranted because BGP already exercised billing discretion in writing off some of its time.

Thus, the Court calculates the lodestar figure in this case to be $865,101.94. This figure represents a 10% reduction from the figure calculated by multiplying the number of hours billed by BGP's attorneys by the reasonable hourly rate of each of BGP's attorneys.[2]

C.

Although there is a strong presumption that the asserted lodestar figure is reasonable, the Court must consider whether it should be adjusted upward or

---

[2] The following table shows the fee total prior to the 10% reduction:

|  | Hourly Rate | Number of Hours | Hourly Rate x Number of Hours |
|---|---|---|---|
| Bragalone | $787.50 | 365.2 | $287,595.0 |
| Olejko | $618.75 | 712.5 | $440,859.4 |
| Associate | $375 | 69.1 | $25,912.5 |
| Associate | $375 | 142.7 | $53,512.5 |
| Associate | $375 | 165.4 | $62,025.0 |
| Associate | $337.50 | 116.2 | $39,217.5 |
| Associate | $412.50 | 8.6 | $3,547.5 |
| Paralegal | $243.75 | 199.2 | $48,555.0 |
|  |  | **Total** | $961,224.38 |

15

downward based on the *Johnson* Factors.³ *See La. Power & Light Co.*, 50 F.3d at 324, 329; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457. Furthermore, the lodestar amount may not be adjusted due to a *Johnson* factor that was already considered during the initial calculation. *See Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). Here, the Court finds no adjustment to the lodestar figure is necessary. The Court considered those factors that might warrant a downward adjustment in the Court's analysis for calculating the lodestar figure. For example, the Court considered the first three factors— (1) the time and labor required; (2) the novelty and difficulty of the legal issues; and (3) the skill required to properly perform the legal service—when determining the reasonableness of the hourly rates charged.

### III.

The Court should **GRANT** in part Plaintiff BGP's Motion for Attorney's Fees (ECF No. 129) and order Defendants to pay BGP reasonable attorney's fees in the amount of $865,101.94.

---

³ The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of counsel; (10) the desirability of the case; (11) the duration and nature of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19.

November 27, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

17

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation (FCR) will be served on all parties in the manner provided by law. Any party who objects to any part of this FCR must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the FCR where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).